**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1397-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TYRON WILLIAMS,

     Defendant-Appellant.

_____

Submitted May 4, 2020 – Decided May 22, 2020

Before Judges Sabatino and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 13-07-0907.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Tyron Williams appeals from an August 20, 2018 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

On March 26, 2013, at about 11:30 p.m., a Burlington Township Patrolman Taylor F. Holba responded to a 9-1-1 domestic violence call from a ten-year-old child, R.L.,[1] who reported an altercation between his mother, T.D., and defendant, his mother's then live-in boyfriend.[2] R.L. said T.D. and defendant were "fighting" and "hitting each other with things."

When Holba arrived, defendant was not present. Holba observed R.L. cleaning cake from the dining room floor and walls. Four other children were also in the home including R.L.'s thirteen-year-old brother, T.L. Holba noticed a television with a shattered screen in the master bedroom and a strong odor of alcohol in the home. He did not observe any visible signs of injury on the victim, T.D. No charges were filed that evening.

Sometime after Holba left, T.D. became ill. She was taken to a hospital emergency room experiencing abdominal pain and vomiting blood. A CAT scan

---

[1] We refer to the victim and witnesses by initials to preserve their confidentiality. R. 1:38-3(d)(10).

[2] T.D. and defendant were not married at the time.

revealed "an injury to her left kidney and injury to her small bowel and blood in her abdominal/pelvic cavity." T.D. was transferred to Cooper University Hospital where doctors performed a laparotomy to remove a portion of her bowel. T.D. told the medical staff that she hurt herself falling down the stairs.

Meanwhile, T.D.'s mother and sister brought R.L. and T.L. to the Burlington Township Police Station. There, Detective Brandon Roberson recorded both children's statements. R.L. stated he saw defendant pin T.D. in a corner while he punched her in the side of her stomach. T.L. stated that defendant left a note in his room asking him to call defendant. When T.L. called, defendant told him to tell R.L. not to say anything to the police.

Roberson was the only grand jury witness. Roberson testified he met with R.L., who stated that he went into T.D.'s bedroom, after hearing her "calling for help," and observed defendant "punch" T.D. on "the side of her stomach" and T.D. "strike [defendant] with an empty alcohol bottle." He testified he also met with T.L., who stated that defendant told him to tell R.L. "not to say anything to the police."

The grand jury was not advised that R.L. and T.L. later recanted what they had told police during an investigation by the Division of Child Protection and Permanency (Division).

The grand jury returned an indictment charging defendant with second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count one), and third-degree witness tampering, N.J.S.A. 2C:28-5(a)(2) (count two).

Anticipating R.L. and T.L. would recant their original statements, the court conducted a Gross[3] hearing to determine the statements' reliability. During the hearing, R.L. testified he lied to the police because he "was mad that [he] got in trouble in school." T.L. testified he lied to the police, stating: "[M]y grandmom and my aunt told us to tell lies that my stepdad hit my mom and knocked her down the stairs" and "they threatened . . . if we didn't tell the police, that we would go to [the Division] and then they would lock my mom up." The court also heard from Detective Roberson. He testified R.L. was "calm" and "polite" and did not appear "forced" or "coerced in to giving a statement" but rather appeared to speak "freely and voluntarily." Detective Roberson testified similarly regarding T.L.

After reviewing the audio recordings of the 9-1-1 call and statements, the court determined R.L. and T.L.'s original statements "do carry an indicia of reliability" and, subject to certain redactions, were admissible at trial as prior inconsistent statements.

---

[3] State v. Gross, 121 N.J. 1 (1990).

A-1397-18T3

At trial, R.L. testified his aunt instructed him lie to the police during the 9-1-1 call and the statement he gave to Detective Roberson. Both R.L. and T.L. denied defendant told them not to talk to the police. The State played the audio recordings of R.L. and T.L.'s interviews during Detective Roberson's testimony. The jury also heard the 9-1-1 call, which the parties stipulated was "a true and accurate copy of the [9-1-1] recording made on March 26, 2013."

During trial, the State and defense counsel agreed not to introduce certain portions of T.D.'s medical records while at Cooper. T.D. testified that she injured herself when she fell down the stairs while attempting to grab her puppy. She also testified R.L. lied to the police.

Tried by a jury, defendant was convicted of second-degree aggravated assault and acquitted of tampering with a witness. On September 12, 2014, the trial judge sentenced defendant to an eight-year prison term, subject to an eighty-five percent period of parole ineligibility and mandatory parole supervision mandated by the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant appealed. We affirmed defendant's conviction, rejecting his arguments that the trial court erred by: (1) allowing the State to present the prior inconsistent statements of R.L. and T.L. through Detective Roberson; (2) replaying the recorded witness testimony during jury deliberation; and (3) permitting jurors

to take notes during playback of recorded testimony.  State v. Williams, No. A-1756-14 (App. Div. Dec. 28, 2016).  The Supreme Court denied certification.  State v. Williams, 230 N.J. 366 (2017).

On August 31, 2017, defendant filed a pro se PCR petition, claiming he was denied the effective assistance of counsel because his attorney failed to:  (1) obtain an "independent medical expert to challenge [the State's] medical opinion"; (2) move "to suppress tapes"; (3) "object to the playback of [9-1-1] tapes during the deliberations"; (4) "object to the playback of R.L.'s recorded interview with Roberson"; (5) "object when the [S]tate was allowed to present prior inconsistent statements of R.L. and T.L."; (6) "cross-examine R.L. and T.L. after their admission of statements before the recordings were played to the jury"; and (7) "object to jurors taking notes."

Counsel was appointed to represent defendant.  Counsel filed an amended PCR petition that incorporated the arguments set forth in his pro se filings and contended defendant was denied effective assistance of counsel because his attorneys failed to:  (1) move to disclose the Division's records; and (2) "investigate and raise the issue of the [State's] failure to present exculpatory evidence to the grand jury."  In his supporting certifications, defendant asserts the Division conducted "an abuse investigation" that determined the allegations

6

"were not sustained" and that no further actions were taken against him by the Division. Defendant avers he informed his pre-trial counsel of the Division's investigation but to no avail. He also claims that he "asked [his] trial counsel to attempt to get the investigation records, and any other related records, from [the Division] to assist in the defense of [his] case," but his "counsel never made any such effort." Defendant "believe[s] that there very well may be information and evidence relevant to [his] defense in the [the Division's] investigation records." T.D. certified R.L. and T.L. recanted their original statements "[w]ithin a few days of the incident" and that such "information was promptly passed on to the police." T.D. maintains defendant never hit her.

Judge Jeanne T. Covert issued an order and nineteen-page written opinion denying defendant PCR without an evidentiary hearing. She found defendant failed to establish a prima facie case of ineffective assistance of counsel and was not entitled to an evidentiary hearing, noting defendant "is unable to demonstrate that he is likely to succeed under the Strickland[4] test and has failed to establish that any motion he could have filed would have been meritorious."

In rejecting defendant's Division records argument, the judge explained that "[t]he information [defendant] claims is exculpatory was already presented

---

[4] Strickland v. Washington, 466 U.S. 668 (1984).

A-1397-18T3

to the jury" through R.L. and T.L.'s testimony and thus "at best it would simply have been cumulative." She noted the "jury heard testimony from R.L. and T.L. that both lied to police under pressure from their aunt and grandmother and recanted their statements that [defendant] assaulted [T.D.]" The judge reasoned that the Division's decision to close its investigation is not "clearly exculpatory evidence regarding the assault of [T.D.]" because Division investigations focus on children; "[the Division] does not investigate adult abuse cases." The judge explained that defense counsel "made a strategic choice at trial not to file the motion for in camera review" because of the potential negative inference that may be conveyed to the jury from learning the Division investigated defendant.

In rejecting defendant's indictment dismissal claim, the judge explained that "recantation testimony is inherently unreliable and is not reliable enough to be clearly exculpatory." In rejecting defendant's independent medical expert claim, the judge found defendant "provide[d] no evidence to make a showing of how the testimony of a medical expert would have led to a different result." She explained defendant failed to provide any expert report, or certification from any potential expert, "demonstrating that they would have concluded something different from the testimony presented at trial regarding [T.D.]"

Finally, the judge rejected defendant's remaining arguments, finding they consisted of "bald assertion[s] unsupported by evidence" or matters "previously adjudicated in his direct appeal." Citing Rule 3:22-5, the judge found the following issues were barred: (1) "counsel failed to object to the playback of 9-1-1 tapes during deliberations"; (2) "counsel failed to object to playback of R.L.'s recorded interview with detective Roberson"; (3) "counsel failed to object when [the] State was allowed to present prior inconsistent statements of R.L. and T.L."; (4) "counsel failed to cross-examine R.L. and T.L. after the admission of statements before recordings were played to the jury"; and (5) "counsel failed to object to jurors taking notes." This appeal followed.

Defendant argues trial counsel was ineffective by failing to move to dismiss the indictment and failing to review Division records for exculpatory evidence.[5]

We review the factual findings made by a PCR court without conducting an evidentiary hearing de novo. State v. Harris, 181 N.J. 391, 421 (2004). We also owe no deference to the trial court's conclusions of law. Ibid. Applying

---

[5] In this appeal, defendant has raised and briefed only two of the nine arguments he raised before the PCR court. His remaining arguments are deemed waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived." (citations omitted)); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2020) (same).

this standard of review, we affirm the denial of defendant's PCR petition substantially for the cogent reasons expressed by Judge Covert in her August 20, 2018 written decision. We add the following comments.

We apply the familiar two-pronged Strickland standard to determine whether defendant has shown that (1) his counsel's performance was so deficient that it "fell below an objective standard of reasonableness," and (2) there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694; accord State v. Fritz, 105 N.J. 42, 49-50 (1987). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Defendant claims trial counsel was ineffective for not moving to dismiss the indictment. We disagree.

The State was not required to inform the grand jury that R.L. and T.L. recanted their statements because such statements are not "clearly exculpatory." See State v. Hogan, 144 N.J. 216, 239-40 (1996) (noting that recantation "testimony is generally considered exceedingly unreliable" and its "sincerity . . . is to be viewed with 'extreme suspicion'" (citations omitted)); State v. Baldwin, 47 N.J. 379, 400 (1966) (a recantation is "inherently suspect"). Further, recanted statements are evidence "merely relat[ing] to credibility" and

10

such issues "are reserved almost exclusively for the petit jury." Hogan, 144 N.J. at 235, 240 (citations omitted).

More fundamentally, once convicted a defendant cannot belatedly raise an alleged impropriety of the State's grand jury presentation. United States v. Mechanik, 475 U.S. 66, 70 (1986); State v. Cook, 330 N.J. Super. 395, 410-11 (App. Div. 2000). A "guilty verdict is universally considered to render error in the grand jury process harmless." State v. Simon, 421 N.J. Super. 547, 551-52 (2011) (citations omitted). The guiding principle is that even as to claims that exculpatory evidence was not presented, or that prejudicial evidence was introduced, once the petit jury speaks, all errors become harmless. Cook, 330 N.J. Super. at 411 (citing Mechanik, 475 U.S. at 70; State v. Warmbrun, 277 N.J. Super. 51, 60 (App. Div. 1995)). As the United States Supreme Court stated in Mechanik,

> the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.
>
> [475 U.S. at 70.]

Accordingly, defendant cannot satisfy either prong of the Strickland/Fritz test.

Defendant also argues trial counsel was ineffective for failing to review the Division's investigation records for exculpatory evidence relating to his aggravated assault charge. We are unpersuaded by this argument.

Defendant contends his counsel's inaction cannot be considered a strategic decision because "he had no idea of [the investigation's] contents" and had there been "evidence of criminal wrong-doing" by defendant, the Division "would have been obligated to give that information to the State anyway."

The judge noted the potential negative inference that may be conveyed to the jury from knowing the Division investigated defendant. "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy of representation by counsel," Fritz, 105 N.J. at 54, particularly where, as here, the jury heard the evidence defendant claims was improperly withheld, see State v. Cusick, 219 N.J. Super. 452, 463 (App. Div. 1987) (denying disclosure of Division records in part because "the information was available elsewhere" and not "necessary for the conduct of the proceedings"). Defendant must rebut the presumption that the challenged action would be "considered sound trial strategy." Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). He has not rebutted that presumption.

A-1397-18T3

As correctly found by the judge, the Division's "investigation would have necessarily and properly focused on R.L. and T.L. and potential abuse to them either directly or by witnessing the abuse of their mother. [The Division] does not investigate adult abuse cases." Thus, the Division's investigation results would not have provided "clearly exculpatory evidence regarding the assault of [T.D.] or any information relevant to her abuse."

The judge further found that trial counsel made a strategic decision not to move for in camera review of the Division's records. The judge noted counsel "was clearly aware of the [Division's] findings and deliberately wished to steer clear of the entire issue before the jury, stating 'I think it's irrelevant and it opens a whole can of worms.'"

The judge concluded that defendant "cannot establish that an in camera review of the [Division's] records would have produced a different result at trial. In fact, everything [defendant] argues could have been exculpatory in the [Division's] records was heard by the jury during the trial."

For these reasons, even if counsel were deemed deficient for not reviewing the Division's records, defendant failed to satisfy the second prong of the Strickland/Fritz test because he did not demonstrate that but for counsel's unprofessional errors, the outcome of the trial would have been different.

13

Last, we address defendant's argument that the trial court erred by not conducting an evidentiary hearing. The right to an evidentiary hearing is governed by Rule 3:22-10(b), which provides:

> A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief. To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.

We review the denial of an evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)).

Judge Covert found that defendant was not entitled to an evidentiary hearing because he did not establish a prima facies case of ineffective assistance of counsel and testimony was not needed to resolve factual issues raised in the petition. The record fully supports those findings. We discern no abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1397-18T3